UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

MARISA CACCAVELLI and LEE PROPHET, on behalf of themselves and all others similarly situated,

       Plaintiffs,

v.

JETRO HOLDINGS, LLC, JETRO CASH AND CARRY ENTERPRISES, LLC, and RESTAURANT DEPOT, LLC,

       Defendants.

ECF CASE

Civil Action No. 17-cv-7306 (PKC) (SMG)

**DECLARATION OF RACHAEL RIVERA IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND <u>STAY JUDICIAL PROCEEDINGS</u>**

------------------------------------------------------------x

  RACHAEL RIVERA, of full age, declares as follows:

  1. I am an employee of ADP, LLC ("ADP"). I have been an ADP employee since 2008. My title is Client Service Manager. I make this declaration on behalf of defendants Jetro Holdings, LLC, Jetro Cash and Carry Enterprises, and Restaurant Depot, LLC (collectively, "Jetro"), in support of their Motion to Compel Arbitration and Stay Judicial Proceedings. Except as otherwise indicated, my statements in this declaration are based on my personal knowledge and belief.

  2. ADP is a global provider of human capital management products and services to employers of all sizes. Among other things, ADP offers an "ADP Self Service Portal" that allows an employer's personnel to electronically access their compensation and benefits information as well as their employer's policies and other documents.

91674130

3. The ADP Self Service Portal also allows an employer to make documents available online to employees and enables the employer to track an employee's acknowledgment and acceptance of those documents. Through the ADP Self Service Portal, employees can electronically acknowledge and assent to documents by clicking their agreement to the document via a mouse or keyboard.

4. For example, through the ADP Self Service Portal, an employer proposes an agreement to an employee. The employee opens and reviews the agreement, and then indicates that he or she accepts its terms by clicking on a designated box on the screen. The ADP Self Service Portal records the date and time of the employee's acceptance.

5. The ADP Self Service Portal also allows the employer to track which employees have and have not accepted a proposed agreement.

6. The ADP Self Service Portal can also provide reminders to employees to ensure that they review policies and sign agreements, as necessary.

7. Thousands of employees working for numerous different companies use ADP's Self Service Portals, which give employers a simple and efficient way to provide documents to a large number of employees and to confirm that their employees receive documents and/or timely accept binding agreements.

8. The ADP Self Service Portal has various proprietary safeguards in place to protect the system from hacking or other unauthorized access or manipulation of documents or data.

9. I have been a member of the team working on ADP's Employee Self Service Portals for my entire employment with ADP. I have been a manager of the team for over two years.

91674130

10. Jetro's ADP Self Service Portal has been in place since on or about October 15, 2013.

11. I have reviewed and am familiar with Jetro's ADP Self Service Portal.

12. Attached as Exhibit 1 is a true and accurate copy of the Jetro Arbitration Agreement that was accessible by Jetro employees through the ADP Self Service Portal in November 2015. The Arbitration Agreement was placed on Jetro's ADP Self Service Portal by a System Administrator – an authorized Jetro employee – who uploaded the document and set up the Self Service Portal system to request and record acceptance of the document by designated Jetro personnel.

13. I have accessed Jetro's ADP Self Service Portal and accessed usage logs. Based on my review of those logs, I have determined that Mr. Prophet[1] logged into the system at 2:20:43 p.m. (EST) and clicked on the Arbitration Agreement in order to open it.

14. I have also generated a log of the employees who electronically accepted the Arbitration Agreement. A true and accurate copy of an excerpt from that log (with redactions to protect the privacy of Jetro employees) is attached as Exhibit 2.

---

[1] The ADP Self Service Portal has safeguards to restrict the ability of someone other than Mr. Prophet to take unauthorized actions on his behalf. In particular, accepting the Arbitration Agreement required the user to input Mr. Prophet's username and password. Even an Administrator could not have accepted the Arbitration Agreement on Mr. Prophet's behalf without his password. While theoretically, an Administrator has the ability to reset Mr. Prophet's password, if that occurred, Mr. Prophet would have received an alert that his password changed and would have had the opportunity to object to or correct that occurrence. I have determined however, that the password was not changed by a third person because I have reviewed the history of Mr. Prophet's password and can see that it was not changed at any time within six months before the date on which the log shows that he accepted the Arbitration Agreement. Therefore, there is no basis to conclude that a person other than Mr. Prophet accepted the Arbitration Agreement on his behalf without his authority.

3

91674130

15. I have reviewed the log of employees who signed the Arbitration Agreement. As reflected in Exhibit 2, plaintiff Lee Prophet accepted the Arbitration Agreement at 2:22:17 p.m. (EST) on November 2, 2015.

16. Based on my knowledge and experience in my work for ADP and, specifically, my familiarity with Jetro's ADP Self Service Portal and its operations, in order for the log to reflect that Lee Prophet accepted the Arbitration Agreement at that date and time, the following events occurred:

(1) Mr. Prophet[2] logged into the secure ADP Self Service Portal via a computer or smart phone, using his unique username and a confidential password that he selected;

(2) In the ADP Self Service Portal, Mr. Prophet received a message from Jetro, indicating that he had "Activities to Complete" and that by clicking "OK," he would see the list of items that he needed to address, which would have included the Arbitration Agreement;

(3) Mr. Prophet clicked on "OK";

(4) The screen then listed activities for Mr. Prophet to address, including "Arbitration Agreement";

(5) Mr. Prophet clicked on "Arbitration Agreement," which opened the Arbitration Agreement;

(6) Mr. Prophet then scrolled through the entire Arbitration Agreement;

(7) Mr. Prophet had the opportunity to read, print and save the Arbitration Agreement;

---

[2] *See* footnote 1.

91674130

(8) On November 2, 2015, at 2:22:17 p.m. (EST), using a mouse or keyboard, Mr. Prophet clicked on a box at the bottom of the screen, below the Arbitration Agreement, next to the words: "I certify that I have read the policy above" – the system would not have allowed Mr. Prophet to click on that box unless he first scrolled through the entire Arbitration Agreement;

(9) The ADP Self Service Portal recorded the date and time when Mr. Prophet accepted the Arbitration Agreement.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 17, 2018.

*Rachael Rivera*
RACHAEL RIVERA

# EXHIBIT 1




# ARBITRATION AGREEMENT
## (ALL STATES EXCEPT CALIFORNIA)

Although we strive to work together in harmony, workplace disputes do sometimes arise. When a dispute exists, it is in the best interest of all concerned to resolve it promptly, efficiently, and fairly. Recognizing the benefits of arbitration over traditional litigation in those regards, the following mandatory arbitration program has been established for the respective employees of Jetro Cash & Carry Enterprises, LLC, Restaurant Depot, LLC, RD America, LLC, Jetro RDNY, LLC, RD/JET, LLC, and FD United, LLC.

Your employer is referred to as the "Company" and you, the undersigned employee, are referred to as "Employee."

**1. MANDATORY AND EXCLUSIVE DISPUTE RESOLUTION METHOD**

THIS ARBITRATION AGREEMENT ("Agreement") is made and entered into by and between the Company and Employee (collectively, the "Parties" and individually "Party"). The Company and Employee hereby agree that the exclusive method for resolving disputes, claims or controversies that are within and not excluded from the scope of this Agreement, whenever they shall have arisen, shall be final and binding arbitration. This Agreement is made pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. (the "FAA"), and shall be enforced pursuant to and in accordance with the letter and spirit of the FAA.

**2. SCOPE OF ARBITRATION OBLIGATION**

a. <u>Subject Matter Scope:</u> Except and only to the extent specifically excluded or otherwise provided below, a dispute, claim or controversy is within the scope of this Agreement and must be submitted to final and binding arbitration if it is a dispute between Employee and the Company and/or any of their respective subsidiaries, parents, affiliates, directors, officers, agents, representatives, attorneys, employees, estates, heirs, successors, and/or assigns, that arises out of or relates to: Employee's employment relationship with the Company; the termination of Employee's employment relationship with the Company; this Agreement and/or any other oral or written, express or implied contract, agreement, or understanding between Employee and the Company (collectively the "Agreements"); the interpretation, construction, applicability, validity, or enforceability of the Agreements, including, but not limited to, any claim that any of the Agreements is void or voidable; the rights and entitlements and performance of the Parties under the Agreements; the arbitrator's jurisdiction; and/or the ability to arbitrate any such dispute. Without limiting or expanding the foregoing, the following are examples of disputes within the subject matter scope of this Agreement:

- Any direct or derivative dispute by or through the Employee with the Company, any of its parent, subsidiary, or affiliated corporations, or any of its or their employees, agents or representatives;

- Any dispute that arose out of or relates to any aspect of employment, including without limitation recruitment, hiring, the working environment, compensation, benefits, promotions, transfers, training, discipline, discharge, or any other term, condition, or effect of employment, or the declination or termination of employment or any term, condition or benefit thereof;

- Any dispute that is based on any express or implied, oral or written contract, agreement or understanding, including without limitation the Agreements;

 

- Any dispute that is based on a common-law principle, including without limitation wrongful or retaliatory discharge, fraud, misrepresentation, defamation, negligent hiring, negligent retention, negligent infliction of emotional distress, intentional infliction of emotional distress, breach of fiduciary duty, breach of duty of loyalty, or misappropriation or unauthorized disclosure of trade secrets or confidential information;
- Any dispute that is based on any federal, state or local statute or ordinance, with all amendments thereto, including without limitation:
  - The Civil Rights Acts of 1866, 1871, 1964, and 1991;
  - The Fair Labor Standards Act;
  - The Equal Pay Act;
  - The Age Discrimination in Employment Act of 1967;
  - The Rehabilitation Act of 1973;
  - The Bankruptcy Code;
  - The Fair Credit Reporting Act;
  - The Worker Adjustment and Retraining Notification Act;
  - The Employee Retirement Income Security Act of 1974;
  - The Americans With Disabilities Act of 1990;
  - The Family and Medical Leave Act of 1993;
  - The Health Insurance Portability and Accountability Act of 1996;
  - The Sarbanes-Oxley Act of 2002;
  - The Genetic Information Nondiscrimination Act of 2008;
  - Wage and hour laws;
  - Wage payment and/or collection laws;
  - Laws against discrimination, harassment or retaliation;
  - Conscientious employee protection (whistleblower) acts;
  - Family and medical or other leave laws; and
  - All laws or ordinances of any jurisdiction that might apply.

The Employee and the Company each may assert in a single arbitration as many claims as he, she, or it might have against the other Party.

    b.    <u>Exclusions from Subject Matter Scope:</u>  Excluded from the scope of this Agreement are actions by the Company or Employee in equity seeking temporary and/or permanent injunctive relief to prevent or discontinue the misappropriation, unauthorized use, or unauthorized disclosure of trade secrets or other protected confidential information; to prevent or discontinue a tort of unfair competition; or to prevent or discontinue a breach of fiduciary duty. If the Employee or the Company applies to a court for equitable relief as described in this provision, such application shall not waive or in any way affect that party's rights under this Agreement.

    c.    <u>Temporal Scope - One-Year Filing Period:</u>  A dispute is within the temporal scope of this Agreement if it is submitted to arbitration in accordance with this Agreement within <u>one year</u> after the date it accrued.  Accordingly, no dispute shall be eligible for submission to arbitration under this Agreement where <u>one year</u> shall have elapsed from the occurrence or event that gave rise to the dispute, such as the Employee's receipt of notice of the final decision

 

challenged, or, when a continuing violation theory is asserted, where one year has elapsed from the most recent occurrence or event in the asserted continuing violation.  The Company and Employee waive any statute of limitation or repose applicable to any claim within the subject matter scope of this Agreement to the extent such is of any length greater than one year.

In the event a dispute that is within the subject matter scope of this agreement is presented to a court instead of in arbitration as required under this Agreement, in the interests of expedience and efficiency, the Parties intend that the court determine whether the Agreement is enforceable and, in addition thereto, decide procedural questions that grow out of the dispute and bear on the final disposition of the matter, including without limitation whether the dispute is beyond the one-year filing period and thus time-barred and permanently and irrevocably waived and released, without incurring the further expense and delay of referring such question(s) to an arbitrator.  Likewise, in the event a dispute that is within the subject matter scope of this agreement is presented in arbitration, in the interests of expedience and efficiency, the Parties intend that the arbitrator determine whether the Agreement is enforceable and, in addition thereto, decide procedural questions that grow out of the dispute and bear on the final disposition of the matter, including without limitation whether the dispute is beyond the one-year filing period and thus time-barred and permanently and irrevocably waived and released.

3.  **ARBITRATION OBLIGATIONS AND ADMINISTRATIVE PROCEEDINGS**

This Agreement does not waive or otherwise affect any unwaivable right the Employee might have to file an administrative charge or complaint with the National Labor Relations Board.  Nor does this Agreement waive or otherwise affect any unwaivable right the Employee might have to file an administrative charge or complaint with a federal or state agency that enforces laws against workplace discrimination ("EEO Proceedings"), although any and all of the Employee's rights to receive individualized relief through EEO proceedings are waived.

Accordingly, because this Agreement cannot waive an Employee's unwaivable right to file an administrative charge or complaint, neither party has any basis or obligation to commence any administrative proceeding or to assert this Agreement as a defense or otherwise in an administrative proceeding, and the filing of an administrative charge or complaint shall not toll, expand, extend or otherwise affect the temporal scope/one-year filing period of this Agreement.  Nor shall participation in such an administrative proceeding by itself affect a waiver of any right or obligation under this Agreement.

Without regard to whether an administrative charge or complaint is filed, a dispute must be submitted to arbitration in accordance with this Agreement or it will be permanently and irrevocably released and waived.  The Company and Employee are equally bound and obligated by this Agreement and therefore neither has a duty to remind the other of this Agreement or his, her or its obligations under it.

4.  **WAIVERS**

a.  <u>Jury Trial Waiver</u>:  The Company and Employee hereby waive any and all rights to a trial by jury in any forum of <u>any</u> dispute between them, whether or not such dispute is within the scope of this Agreement.

b.  <u>Extra-Arbitration Remedies</u>:  Arbitration pursuant to this Agreement is the exclusive method for resolving disputes that are within the scope of this Agreement.  Accordingly, except through arbitration in accordance with this Agreement, neither the Company nor the Employee shall have any right, and each Party hereby waives any and all rights, to receive individualized relief, including without limitation any money damages or other relief,




through any lawsuit, complaint, action or proceeding commenced or maintained by or on behalf of the Party in any court, agency, or other forum with respect to any act, omission, claim or other matter that is within the scope of this Agreement.

  c. <u>Disputes Not Submitted to Arbitration in Accordance With This Agreement</u>:  With respect to any dispute within the subject matter scope of this Agreement, the failure to request arbitration within the time and according to the procedures set forth herein shall operate as a waiver and general release in favor of the defending party or parties of any and all claims arising out of such dispute, and a waiver and general release of any and all rights the waiving party had or might have to assert such claims in any forum.  The Parties intend that no court or arbitrator shall have the power or authority to consider or rule on the merits of any dispute that is within the subject matter scope of this Agreement and is asserted after the expiration of the <u>one-year</u> filing period, and that such court or arbitrator shall instead dismiss with prejudice any claim so asserted as waived, released and/or time-barred pursuant to this Agreement.

  d. <u>Class or Collective Action:</u>  Claims of more than one complaining party may not be combined or arbitrated in a class, collective, or representative capacity.  The Company and the Employee agree that any dispute within the scope of this Agreement shall be asserted and arbitrated in an individual capacity only and shall not be asserted or arbitrated in any representative capacity, as a class or collective action, or on behalf of any person or persons other than the Employee and the Company, and each hereby waives any right he, she, or it might have to the contrary.

**5. INITIATING ARBITRATION**

  To start the arbitration process, the complaining Party, whether the Company or Employee, must submit a written arbitration request to the American Arbitration Association ("AAA") within <u>one year</u> after the date a cause of action accrued.

**6. ARBITRATION RULES**

  The FAA shall apply to all arbitrations under this Agreement to the exclusion of any state law governing arbitration and to the exclusion of any state or other law that would stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the FAA and/or this Agreement.  The arbitrator shall have full authority to award damages and other remedies as may be available under applicable law and, to the extent the law permits, award costs and attorneys' fees.  Disputes will be resolved according to the AAA Employment Arbitration Rules and Mediation Procedures, or such subsequent AAA employment dispute rules as are in effect at the time of the arbitration proceeding ("AAA Rules"), which are incorporated into this Agreement to the extent consistent herewith.  To the extent there is any inconsistency between the AAA Rules and this Agreement, this Agreement shall control.  Employee may find the AAA Rules at the AAA's website:  www.adr.org.  Also, at any time during or after Employee's employment, Employee may receive a copy of the AAA Rules from the Company upon request.

  The arbitrator will be selected from a panel of licensed attorneys having experience with and knowledge of employment law.  The arbitrator may hear and determine any dispositive issue of law asserted by a Party to the same extent a court could hear and determine a dispositive motion, such as a motion to dismiss, motion for judgment on the pleadings, motion for summary judgment, motion for directed verdict, or motion notwithstanding the verdict.  In ruling on such motions, the applicable Federal Rules of Civil Procedure and federal court decisions thereunder may be referred to as guides.  The award of the arbitrator shall be accompanied by a reasoned opinion, which shall be in writing, signed by the arbitrator, include

 

findings of fact and conclusions of law, include a discussion of the reasons for the disposition of each claim, and, if applicable, include a breakdown as to specific claims ("Underlying Award"). The Underlying Award shall not be considered final until after the 30-day period for filing a notice of appeal pursuant to the AAA's Optional Appellate Arbitration Rules ("Appellate Rules") has expired. The Appellate Rules are available on the AAA's website: www.adr.org and Employee may receive a copy of the Appellate Rules from the Company at any time, upon request. Judgment upon a final award may be entered in any court having jurisdiction thereof.

7. **APPELLATE ARBITRATION**

Employee and the Company hereby agree that the Underlying Award may be appealed pursuant to the Appellate Rules. Appeals must be initiated within thirty (30) days of receipt of an Underlying Award, as defined by Rule A-3 of the Appellate Rules, by filing a Notice of Appeal with the AAA office that administered the arbitration resulting in the Underlying Award. Following the appeal process, the decision rendered by the appeal tribunal may be entered in any court having jurisdiction thereof.

8. **CONFIDENTIALITY**

Except as may be required by law, neither a Party nor an arbitrator may disclose the existence, content, or results of any arbitration or appeal hereunder without the prior written consent of both Parties; however, a Party may disclose the existence, content, or results of any arbitration or appeal hereunder to their attorneys and tax advisors without prior written consent of the other Party, provided such persons first agree to be bound by this confidentiality provision.

9. **COSTS OF ARBITRATION**

The Company shall pay 100% of all costs peculiar to arbitration, including without limitation AAA administrative fees, arbitrator compensation and expenses, and costs of witnesses called by the arbitrator ("Arbitration Costs"). Except to the extent set forth above and unless otherwise ordered by the Arbitrator under applicable law, each Party shall bear his, her or its own expenses, such as expert witness fees and attorneys' fees and costs.

10. **SEVERABILITY**

If any provision of this Agreement is held to be void or otherwise unenforceable, then the Parties intend that such provision be modified only to the extent necessary to render it enforceable as modified or, if the provision cannot be so modified, the Parties intend that the void or otherwise unenforceable provision be severed and the remainder of this Agreement, and all remaining covenants, obligations and provisions as so modified, remain valid, enforceable, and in full force and effect.

11. **ACKNOWLEDGEMENTS**

I acknowledge that I was afforded a reasonable opportunity to take this Agreement home and consult with an attorney or other persons of my choosing prior to accepting this Agreement. I have read (or have had read to me in a language I understand), and I understand and agree to be legally bound by this Agreement. I acknowledge that I received a copy of this Agreement and that it is my obligation to retain and refer to it as appropriate. I acknowledge that this Agreement is binding upon both the Company and me. I acknowledge that my promise to be bound by this Agreement is given in exchange for my employment or continued employment with the Company and, in addition thereto, the Company's promise to be bound by this Agreement. I acknowledge that I shall not be bound by any modification of this Agreement

 

unless and until such modification is communicated to me in writing and I continue in the Company's employ in acceptance of and exchange for such modification. I further acknowledge that acceptance of this Agreement is a condition of my employment or continued employment. For that reason, without regard to whether I sign this Agreement, my receipt of this Agreement and my employment or continued employment with the Company thereafter shall constitute my acceptance hereof. This Agreement sets forth the entire agreement between the Parties, and fully supersedes any and all other prior or contemporaneous written or oral contracts, agreements, or understandings, pertaining to the subject matter hereof.

_____Date:    _____
**Employee Signature**

_____
**Print Employee Name**

# EXHIBIT 2

Event Name: Arbitration Agreement
Description:

Security Groups: Administrative All Active not CA or FL, Administrative CA not SF Active, Administrative FL Active, Administrative San Francisco Active, Miami NonAdministrative All Active
Start Date: 10/9/2015 0:00
End Date:
Status: Active

| POLICY NAME | POLICY VERSION | ACK REQUIRED | EMPLOYEE ID | NAME | USER ID | EMPLOYMENT STATUS | ACKNOWLEDGE DATE |
|---|---|---|---|---|---|---|---|

REDACTED

| Arbitration Agreement | 2015 | Yes | 65204 | Prophet, Lee | LPROPHET@JETRORD | Terminated | 11/02/2015 02:22:17PM EST |

REDACTED

REDACTED